## Riddle v. Cameron.

*Bill in Equity for Specific Performance of Contract for Division of Land between Joint Owners.*

*When equity will not decree specific performance of contract.* — A bill for the specific performance of a contract for the division of land between two joint owners cannot be sustained, when the complainant's testimony shows that he purchased an undivided interest from the defendant, and that the parcel he was to receive on the division was in consideration of his interest in the land and the money he paid to obtain it.[1]

APPEAL from the Chancery Court of Clay. Heard before the Hon. B. B. McCRAW.

C. D. HUDSON, for appellant.

L. E. PARSONS, contra.

B. F. SAFFOLD, J. — The bill was filed by the appellee, to secure the specific performance of a contract for the division of lands, which were held by him and the appellant as joint owners. The defence was, that no such contract was made. The court decreed in favor of the complainant on the evidence.

The two parties were the principal witnesses, the other testimony being corroborative respectively. Both parties agree that the land belonged to the appellant, Riddle, and was sold by him, in 1856, to the appellee, Cameron, and William Amarine, jointly, for the sum of $1,800; and that in 1857 Amarine retired from the contract, and Riddle took his place. At this time, $290 of the purchase money had been paid by Cameron; and he was to pay to Riddle the difference between that amount and one half of the price previously agreed on to entitle him to one half interest in the land. In 1858, Cameron thought he could sell two hundred and forty acres of the three hundred and twenty for $4,000; and to enable him to do so,

[1] This head-note was written by SAFFOLD, J. — REP.

Riddle executed to him a bond for titles to so much. At the time of receiving this bond for titles, Cameron gave to Riddle his note for $625, the balance due from him on his purchase of a half interest in the whole tract. No sale of the land was effected. So far, there is no conflict of evidence.

Cameron testifies further, that afterwards he and Riddle agreed to a division of the land, by which he was to receive the two hundred and forty acres of hill land, supposed to contain copper, in consideration of the eighty acres of bottom land lying on Talladega Creek, best fitted for cultivation, and the $290 which he had previously paid, to be taken by Riddle. He is supported in this by his witness Freeman, who testifies, that Riddle told him, in 1859, he and Cameron had made a "new deal," by which he was to have the eighty acres in *part payment* of the land, Cameron having paid him two mules (valued at $290) in the outset, and Cameron was to have the 240 acres of "mineral land."

Riddle, as a witness in his own behalf, denies all of this, and says that, after the failure of Cameron to effect a sale, they agreed to rescind their contract entirely, and in pursuance of the agreement, he tore up the note for $625; but Cameron, after promising to do so, refused to surrender the bond for titles. He says, that the separate possession of the eighty acres by him, and of the two hundred and forty acres by Cameron, was under the agreement for a sale of the mineral land, which failed. The separate possession of the parcels about the time to which he refers is admitted and proved; but no other witness than those above mentioned knew anything more of either a division of the land, or of a rescission of the contract.

The value of the mineral land may be stated at one dollar and a quarter an acre, but that of the other parcel is variously represented. Cameron says it was worth fifteen or twenty dollars an acre. Freeman says, about seven and a half dollars in 1856, and about $3.75 in 1868. W. H. Amarine says, $10.00 an acre in 1868. Hurst says, about $4.00 for forty or fifty acres, and less for the remainder.

Cameron's account of the alleged division cannot be correct. He could not give the $290 paid by him, *in addition* to his interest in any portion of the land, because without that payment, he had no interest at all. He has never paid any more, but he was to pay about $600 more to entitle himself to a half interest in the entire tract. Freeman's support of his testimony on this point is alike inconsistent. It was impossible for Riddle to have received the eighty acres, *and* the value of the mules, for his half share. The sum of the testimony in behalf of Cameron is, that Riddle agreed to let him have the two hun-

[Bradley *v.* Hunter.]

dred and forty acres of mineral land for $290. But he does not claim that this was the case. On the contrary, he testifies that " he (Cameron) transferred to Riddle his interest (one half) in a tract of eighty acres of land lying on Talladega Creek, in which land Cameron and Riddle were partners with equal shares, together with what he (Cameron) had previously paid him (Riddle), for the two hundred and forty acres of land." No valuation of the separate parcels, under the testimony, estimating both at $1,800, would make $290 a fair price for one half interest in the eighty-acre parcel. Cameron could not, therefore, have had a half interest in that piece ; and it is very certain that he could not give such interest as he had, *and the money he paid to obtain it*, in exchange for other land.

We cannot consider this case in the light of an entire abandonment by the parties of the original contract, by which Cameron was to pay $900 for a half interest in all of the land, and of a new agreement between them, under which Riddle was to sell the two hundred and forty acres of mineral land to Cameron for the $290 which he had paid some years before. There is no testimony to that effect, and the bill is based on an agreement to divide the land between joint owners.

It is needless to consider the testimony tending to show that, as late as 1859, or 1860, Cameron admitted an indebtedness to Riddle for the land, which he was unable to pay, and that he offered improper inducement to witnesses to swear that Riddle had agreed to the alleged division.

The decree of the chancellor is reversed. As the complainant may have rights, which he can enforce by a proper bill, a decree will be entered in this court, dismissing the bill without prejudice.